UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEVEN A. DOYLE,

                Plaintiff,

           V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

08-CV-641
(TJM/VEB)

## I. INTRODUCTION

In April of 2005, Plaintiff Steven A. Doyle filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that he has been unable to work since May 15, 2004, due to various mental impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, acting *pro se*, commenced this action on June 19, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On August 24, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 23).

## II. BACKGROUND

The relevant procedural history may be summarized as follows. In April of 2005, Plaintiff applied for DIB and SSI benefits, alleging that he had been unable to work since May 15, 2004. (T[1] at 19, 376). The Commissioner initially denied the application on November 30, 2005. (T at 19). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on December 28, 2005. (T at 40). On June 19, 2007, a video conference hearing was held with Plaintiff appearing in Utica, New York and ALJ J. Michael Brounoff in Syracuse. (T at 19, 393). Plaintiff appeared and testified, but was not represented by counsel, despite being advised of that right. (T at 19, 393-394).

On September 28, 2007, the ALJ issued a written decision denying Plaintiff's applications for benefits. (T at 19-26). Thereafter, Plaintiff's time to request review from the Social Security Administration's Appeals Council expired. Plaintiff requested an extension of time to gather additional documentation. (T at 14, 15). The Appeals Council granted the request for additional time to present new evidence and allowed Plaintiff until February 2008 to submit the documentation. (T at 12). No additional evidence was ever submitted and the Appeals Council issued a decision on June 9, 2008 denying Plaintiff's request for review. (T at 7-9).

Plaintiff commenced this action by filing a *pro se* Complaint on June 19, 2008. (Docket No. 1). Louise Marie Tarantino, Esq. entered an appearance on behalf of Plaintiff on December 9, 2008, and filed a supporting Brief on February 13, 2009. (Docket No. 17). The Commissioner filed a Brief in opposition on May 1, 2009. (Docket No. 21).

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No.11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

As set forth more fully below, the Court finds that there is substantial evidence supporting the ALJ's decision, and it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be granted.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

    **1.   Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements through December 31, 2008.  (T at 21). The ALJ also found that Plaintiff had not engaged in substantial gainful activity since May 15, 2004, the alleged onset of disability date. (T at 21). The ALJ determined that Plaintiff had the following impairments considered "severe" under the applicable Social Security Act Regulations (the "Regulations"): depressive disorder,

---

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

generalized anxiety disorder, attention deficit hyperactivity disorder, and learning disabilities. (T at 21).  However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 23).

After reviewing the medical evidence, the ALJ concluded that Plaintiff "has the residual functional capacity to perform work at all exertional levels, and he maintains the ability (on a sustained basis) to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting." (T at 23).  The ALJ found that Plaintiff could not perform his past relevant work as a security guard or cook.  (T at 25).

The ALJ noted that Plaintiff's age, 37 years old at the time of his decision, defined Plaintiff as a younger individual.  Based on his residual functional capacity, age, education (high school), and work experience, the ALJ determined that Plaintiff can perform jobs that exist in significant numbers in the national economy.  (T at 25).  Accordingly, the ALJ concluded that Plaintiff is not under a "disability," as that term is defined under the Act, and denied the application for benefits. (T at 26).

As noted above, the ALJ's decision became the Commissioner's final decision on June 9, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 7-9).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed for two principal reasons,  First, Plaintiff contends that the ALJ erred in applying the Medical-Vocational Guidelines.  Second, Plaintiff argues that new and material evidence requires a remand.  Each argument will be addressed in turn.

### a. Use of the Medical-Vocational Guidelines (The "Grids")

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996):

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. §

404.1567(a). Upon consideration of a claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, Plaintiff argues that his work capacity was significantly diminished by non-extertional impairments and, thus, the ALJ's use of the Grids was inappropriate. In support of this argument, Plaintiff points to a psychiatric evaluation performed at St. Elizabeth's Medical Center in November 2004. As part of that evaluation, Ellen Karwacki, a nurse practitioner, diagnosed Plaintiff as suffering from anxiety disorder and impulse control disorder. (T at 221). She assessed Plaintiff's Global Assessment Functioning ("GAF") score at between 50 and 60. (T at 221). That GAF range indicates a moderate level of impairment. See Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed.2000) (listing scores from 51 through 60 as indicating "moderate symptoms (*e.g.* flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, no friends, conflicts with peers or co-workers)").

Plaintiff also cites treatment notes from the York Street Clinic, which indicated a diagnosis of depression and treatment of that condition with prescription medication (T at 285, 296). The treatment notes also indicated that Plaintiff "needs a lot of support in

8

stressful situations since he is unable to handle pressure . . . ." (T at 303).

Dr. David Strang, who performed a consultative psychological examination, noted that Plaintiff's "attention deficit disorder has . . . contributed to his poor employment history." (T at 263). Dr. Strang also opined that Plaintiff was reading at a fifth grade level and spelling at a third grade level. (T at 263). Dr. Stang indicated that Plaintiff's history indicated that he had "[b]ipolar disorder type 1." (T at 264).

Plaintiff also points to the findings of Krishna Mudigonda, who performed a psychiatric evaluation. Dr. Mudigonda indicated that Plaintiff had reported "problems with completing tasks, having good judgment re: tasks, and understanding complex things." (T at 367). He also opined that Plaintiff had "poor judgment socially" and "does not take supervision well." (T at 368). Dr. Mudigonda believed that Plaintiff's social judgment and ability to follow through with tasks and responsibilities was affected by his mental impairments. (T at 368). He also noted that Plaintiff "self-report[ed]" an inability to follow directions and act appropriately and responsibly in a work setting. (T at 368).

Plaintiff notes that the Disability Report prepared by the Social Security Administration's Field Office indicated that Plaintiff had difficulty concentrating, talking, answering, and with coherency during his interview. (T at 104). He also points to documentation provided by his former employer, which indicated that Plaintiff had "attendance issues." (T at 121). The operations manager at Plaintiff's former employer opined that Plaintiff was not capable of obtaining and holding a job in a competitive work environment. (T at 126).

Plaintiff also contends that the ALJ improperly discounted his testimony concerning the nature and extent of his disability. Plaintiff testified that he was just not "mentally . . .

able" to work due to "mental illness and anxiety and depression." (T at 409-10, 417).

The ALJ concluded that Plaintiff's mental impairments imposed mild limitations on his activities of daily living, moderate limitations on social functioning, and moderate limitations on his ability to maintain concentration, persistence, or pace. (T at 22). The ALJ further determined that Plaintiff's non-exertional limitations had "little or no effect on the occupational base of unskilled work at all exertional levels." (T at 26). The ALJ found that Plaintiff maintained the residual functional capacity to meet the basic mental demands of competitive, remunerative, unskilled work and, thus, determined that a finding of "not disabled" was appropriate under the framework set forth in section 204.00 of the Grids. (T at 26). This Court finds that the ALJ's determination in this regard was supported by substantial evidence.

As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06). When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A *substantial* loss of ability to meet

any of these basic work-related activities would severely limit the potential occupational base." Id. (emphasis added).

The record contains sufficient evidence to support the ALJ's conclusion that Plaintiff's mental impairments did not cause a substantial loss of ability to meet any of these basic work-related activities.

Concerning Plaintiff's ability to understand, carry out, and remember simple instructions, Plaintiff's treating psychiatrist, Dr. Mudigonda, opined that Plaintiff had no limitations in this regard. (T at 367). Although Plaintiff received ongoing treatment for his mental impairments (T at 340-60, 371, 373-74), Dr. Mudignoda's treatment notes indicate that he considered Plaintiff "quite stable psychiatrically." (T at 285, 293).

Dr. Stang, one of the consultative examiners, noted that Plaintiff had limited reading and writing skills and indicated that clarification should be sought regarding Plaintiff's "alleged bipolar disorder." (T at 259). However, he determined that Plaintiff "can follow simple directions, as evidenced by his ability to complete the intellectual testing." (T at 263). Dr. Shapiro, another consultative examiner, reached the same conclusion, opining that Plaintiff "appears to be capable of understanding and following simple instructions and directions." (T at 315).

With respect to the ability to respond appropriately to supervision, coworkers, and usual work situations, the record is clear that Plaintiff is at least somewhat limited. As noted above, Dr. Mudigonda indicated that Plaintiff had limitations in terms of his ability to interact appropriately with his supervisors and co-workers and opined that Plaintiff's social judgment was "poor." (T at 368).

However, Dr. Mudignoda determined that Plaintiff's limitations in this regard were

11

"moderate," as opposed to marked or extreme. (T at 368). For purposes of the Medical Source Statement that Dr. Mudignoda completed, a "moderate limitation" was defined as follows: "more than a slight limitation . . . but the individual is still able to function satisfactorily." (T at 367). Further, Dr. Shaprio opined that Plaintiff appeared to be capable of performing simple and complex tasks with supervision. (T at 315). Dr. Shapiro also determined that Plaintiff "appears to be able to relate to and interact appropriately with others." (T at 315).

In terms of his ability to deal with changes in a routine work setting, there is, again, evidence in the record suggesting that Plaintiff has some limitations. However, substantial evidence supports the ALJ's finding that Plaintiff's ability to deal with such changes is not significantly diminished by his mental impairments. While Dr. Mudignoda noted Plaintiff's self-report of "high anxiety under stress," he described the limitations on Plaintiff's ability to respond appropriately to usual work situations and to changes in a routine work setting as "mild." (T at 368). Dr. Shapiro opined that Plaintiff "appears to be capable of dealing with stress." (T at 315).

The foregoing assessments concerning Plaintiff's ability to perform basic mental demands of competitive, remunerative, unskilled work on a sustained basis constitute substantial evidence supporting the ALJ's conclusion. Further support is found in the assessments of the State Agency review consultants. For example, Dr. Iport opined that Plaintiff was not significantly limited with regard to his ability to understand, remember, and carry out very short and simple instructions; not significantly limited in terms of sustaining an ordinary routine without special supervision, working in coordination with others, or interacting with the general public. (T at 279-80). Dr. Iport further concluded that Plaintiff

was only moderately limited with respect to his ability to respond appropriately to changes in the work setting. (T at 280).

Dr. Gieseken, another State Agency review consultant, opined that Plaintiff retained the residual functional capacity to "perform entry level work activities." (T at 319). Dr. Gieseken found that Plaintiff was not significantly limited with respect to remembering, understanding, and carrying out very short and simple instructions. (T at 317). He also concluded that Plaintiff was not significantly limited with respect to his ability to respond appropriately to changes in the work setting. (T at 318).

Thomas Harding, Ph.D., another State Agency review consultant, also reviewed the Plaintiff's medical records and determined that Plaintiff retained the ability to perform entry level work activities. (T at 337). Dr. Harding's residual functional capacity assessment was consistent with that of the other State Agency review consultants and the evidence as a whole.

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are consistent with the

findings of the treating provider and consultative examiners.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

With regard to the assessment of Plaintiff's credibility, "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints . . . ." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir.1984) (citations omitted).  The ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999). The hearing was conducted via videoconference, a method commonly used by the Commissioner.  See Chodakowsky v. Astrue, 06-CV-7668, 2009 WL 2482143, at *1 (S.D.N.Y. Aug. 13, 2009); Rodriguez v. Astrue, No. 07-CV-3309, 2008 WL 2073508, at *1 (S.D.N.Y. May 14, 2008); Torres v. Astrue, 550 F.Supp.2d 404, 407 (W.D.N.Y.2008).  Although the issue does not appear to have been directly addressed in the social security context, courts have generally concluded that a videoconference allows a hearing officer to evaluate credibility just as well as if the witness had offered live testimony. See, e.g., United States v. Corley,  348 F.Supp.2d 970, 972 n. 1 (N.D.Ind.2004)  ("The video conference allowed the Court to

assess credibility just as well as if the witness had testified in person."); Elkins v. Secretary of Health & Human Servs., No. 00-14V, 2002 WL 1488753, at *2 n. 2 (Fed.Cl. May 1, 2002) ("I note that I was able to see and hear the witness very well. I found that the videoconference testimony is virtually equivalent to taking the witnesses' testimony 'in person.' "). Moreover, videoconferences are commonly used by ALJs in social security cases and the Plaintiff in this particular case has raised no issue concerning the adequacy of the videoconference proceedings. See Chodakowsky v. Astrue, 06-CV-7668, 2009 WL 2482143, at *1 (S.D.N.Y. Aug. 13, 2009); Rodriguez v. Astrue, No. 07-CV-3309, 2008 WL 2073508, at *1 (S.D.N.Y. May 14, 2008); Torres v. Astrue, 550 F.Supp.2d 404, 407 (W.D.N.Y.2008).

The ALJ concluded that Plaintiff's testimony concerning the nature and extent of his mental impairments was "not fully credible." In light of the evidence cited above, this Court finds no reversible error with regard to this determination.

### b.     New Evidence

The Social Security Act provides that a district court may remand a case to the Commissioner to consider additional evidence that was not included as part of the original administrative proceedings. See 42 U.S.C. § 405(g) (sentence six) ("The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.").

This type of remand, commonly referred to as a "sentence six remand," is only appropriate if new, non-cumulative evidence presented to the District Court should be considered by the Commissioner *and* if the claimant can establish good cause for having

failed to present the evidence during the original administrative proceedings. See Lisa v. Sec'y of Dep't of Health and Human Servs., 940 F.2d 40, 43 (2d Cir.1991).

In the Second Circuit, courts employ a three-prong test to determine whether a sentence six remand is warranted. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir.1988). First, the evidence must be "new" and not merely cumulative of evidence in the administrative record. Id. (citing Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir.1984)). Second, the new evidence must be "material," *i.e.* "it must be relevant to the claimant's condition during the time period for which benefits were denied and probative." Id. (citing Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir.1975)). The "materiality" prong further requires a finding that there is a reasonable possibility that the new evidence would have changed the outcome before the Commissioner. See Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir.1991). Third and finally, the plaintiff must demonstrate good cause for failing to present the evidence earlier. Lisa, 940 F.2d at 43.

Plaintiff argues that a remand is required to permit the Commissioner to consider three pieces of additional evidence.  First, Plaintiff submits certain grammar school and high school records from 1981 through 1988, which document his spelling and reading difficulties, along with diagnosed learning disabilities. (Exhibit A attached to Docket No. 17). Second, Plaintiff wishes to present a psychiatric evaluation prepared by Dr. Surendra Johri in December of 2007. (Exhibit B attached to Docket No. 17).  Dr. Johri indicated a diagnostic impression of bipolar disorder.  Plaintiff also seeks to offer a report prepared by Dr. Johri in January 2008, in which Dr. Johri mentions the fact that Seroquel, one of the medications that Plaintiff had been taking may cause diabetes.  (Exhibit C attached to Docket No. 17).  Plaintiff argues that this report should be considered along with a medical

16

note indicating that he had been diagnosed with diabetes. (T at 355).

This Court finds that a sentence six remand is neither necessary nor appropriate. Plaintiff's grammar school and high school records have remote relevance. Plaintiff's difficulties with regard to reading and spelling were adequately documented in the record before the ALJ and there is little likelihood that the decision would have been affected by the archival records from Plaintiff's early life. The reports from Dr. Johri are largely consistent with the medical records submitted to the Commissioner. Indeed, in his December 2007 report, Dr. Johri noted that, although Plaintiff had "limited insight," his intelligence was normal and his memory was "good." Further, he assessed Plaintiff's GAF at 60, which indicates moderate symptoms. Kohler v. Astrue, 546 F.3d 260, 262 n.1 (2d Cir. 2008). Plaintiff's attempt to interject diabetes into the case at this point is unavailing, as there is no indication either in the record before the ALJ or in the newly proffered evidence that Plaintiff's diabetic condition is even arguably disabling, either alone or in combination with his other impairments.

Lastly, this Court is not convinced that Plaintiff established good cause sufficient to justify his failure to submit the evidence to the Appeals Council. Although Plaintiff was acting *pro se*, he was assisted by Willie Rodriguez from the Resource Center for Independent Living, who requested and received additional time for Plaintiff to submit additional evidence to the Appeals Council. (T at 12). No such evidence was submitted and Plaintiff has not established "good cause" for failing to do so. Moreover, even if the failure to submit the evidence was excused, there is no likelihood that the evidence would have changed the outcome of the proceedings before the Commissioner. As such, Plaintiff's request for sentence six remand should be denied.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including Plaintiff's treating providers, and afforded Plaintiff's subjective claims an appropriate weight when rendering a decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   September 30, 2009

Syracuse, New York

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

September 30, 2009

Victor E. Bianchini
United States Magistrate Judge